**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CLAYTON A. LEWIS, et al., | Case No.: 2:16-cv-02787-JAD-NJK |
| Plaintiff(s), | **ORDERS and** |
| v. | **REPORT & RECOMMENDATION** |
| CAESARS ENTERTAINMENT CORPORATION, et al., | |
| Defendant(s). | |

Pending before the Court is the third order for Defendant Bingli Yang and her counsel (Aaron Aquino) to show cause why various sanctions should not be imposed on them. Docket No. 77. On November 9, 2018, the Court held a hearing on that order to show cause and for Plaintiffs to prove up damages. Docket No. 81.

## I.    BACKGROUND

Plaintiffs and Defendant Yang have been employed as traveling poker dealers. *See, e.g.*, Compl. (Docket No. 1-1) at ¶¶ 10, 17. Plaintiffs claim Defendant Yang defamed them for the intended purpose of interfering with their future employment opportunities. *See, e.g.*, *id.* at ¶¶ 17-48, 69-74. Plaintiffs allege that Defendant Yang's tortious conduct was particularly egregious in an encounter in March 2015, during which Defendant Yang engaged in public outbursts in which she accused Plaintiffs of, *inter alia*, theft. *See id.* at ¶¶ 19-20. Plaintiffs allege that Defendant Yang has stated that she engaged in this conduct in retaliation for Plaintiffs providing statements for a witness against Defendant Yang in an earlier employment hearing. *See id.* at ¶ 17.

1

Defendant Yang appeared in this action. *See, e.g.*, Docket No. 6 (joinder in notice of removal). Nonetheless, Defendant Yang admitted through the discovery process the key facts supporting Plaintiffs' claim, including that she knowingly made false accusations against Plaintiffs for the purpose of interfering with their employment opportunities. *See, e.g.*, Docket No. 56 at 6. On June 7, 2018, summary judgment was entered against Defendant Yang on the issue of liability. *See id.* at 7.

On June 7, 2018, United States District Judge Jennifer A. Dorsey also ordered that a mandatory settlement conference be held. *Id.* On June 8, 2018, the undersigned issued an order setting that mandatory settlement conference (hereinafter, "the August settlement conference"), and establishing the requirements for that settlement conference. Docket No. 57. One of those requirements was that each party was required to submit a settlement statement containing specified information. *Id.* at 2-3. The parties' settlement statements were due by August 1, 2018. *See* Docket No. 58 (advancing settlement conference and deadline to submit settlement statements). The Court cautioned that:

> **FAILURE TO COMPLY WITH THE REQUIREMENTS SET FORTH IN THIS ORDER WILL SUBJECT THE NON-COMPLIANT PARTY AND/OR COUNSEL TO SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 16(f).**

Docket No. 57 at 3 (emphasis in original). The Court received Plaintiffs' settlements statement, but, despite the above warning, Defendant Yang and Mr. Aquino did not submit a settlement statement.

Having not received a settlement statement from Defendant Yang and Mr. Aquino, on August 3, 2018, the Court ordered that they submit a settlement statement by noon on August 6, 2018. Docket No. 61.[1] The Court again warned that "[f]ailure to comply with this order may result in the imposition of sanctions." *Id.* Despite that warning, Defendant Yang and Mr. Aquino did not submit a settlement statement.

---

[1] A "minute order" constitutes an order for purposes of Rule 16(f) of the Federal Rules of Civil Procedure. *See, e.g.*, *Gfeller v. Doyne Med. Clinic, Inc.*, Case No. 2:14-cv-01940-JCM-VCF, 2015 WL 5210392, at *8 (D. Nev. Sept. 3, 2015).

Having still not received a settlement statement from Defendant Yang and Mr. Aquino, on August 6, 2018, the Court provided them one final opportunity to comply and ordered a settlement statement be submitted by 10:00 a.m. on August 7, 2018. Docket No. 62. The Court simultaneously ordered Defendant Yang and Mr. Aquino to show cause why they should not be sanctioned for violating the previous orders to submit a settlement statement. *Id.* The Court also warned that "**FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN THE INITIATION OF CONTEMPT PROCEEDINGS.**" *Id.* at 2. The threat of sanctions arising out of the prior violations and the warning against any further violation proved ineffective, as Defendant Yang and Mr. Aquino still did not submit a settlement statement.

The violation of the above orders resulted in the vacation of the August settlement conference. Docket No. 63. It also resulted in the issuance of a second order for Defendant Yang and Mr. Aquino to show cause why they should not be sanctioned. Docket No. 64. Mr. Aquino filed a preliminary response to the two orders to show cause identifying health problems as the cause for the noncompliance. Docket No. 67. Given the underdeveloped nature of those representations, the Court provided Defendant Yang and Mr. Aquino with an additional 30 days to file a complete response supported by declaration. Docket No. 68. Notwithstanding the provision of a lengthy extension, Defendant Yang and Mr. Aquino filed a further response that included no additional detail. Docket No. 70. Instead, they filed essentially the same response as before that was supported this time by Mr. Aquino's declaration stating only that:

> Due to extreme illness as stated and recounted in this response to myself and my family, deadlines in this case were not met.
>
> The inability to meet these deadlines were substantially justified as the circumstances of the emergency were unavoidable and unforeseeable.

*Id.* at 4. Because the further response continued to be lacking, on September 17, 2018, the Court ordered Mr. Aquino to appear for a show cause hearing to be held on September 25, 2018. Docket No. 71. The Court also set that hearing to explore the potential for resetting the settlement conference. *See id.* at 1 n.1. Mr. Aquino failed to appear at that hearing. Docket No. 72; *see also* Hearing Rec. (9/25/2018) at 3:16 – 3:17 p.m.

In summary, as of late September, Defendant Yang and Mr. Aquino had violated three orders to submit a settlement statement and Mr. Aquino had violated an additional order to appear for a show cause hearing. The Court gave them several opportunities, but Defendant Yang and Mr. Aquino failed to provide any reasonable justification for their violations of these orders.[2] Moreover, Mr. Aquino thwarted the Court's ability to obtain a fuller explanation by violating the order to appear for a show cause hearing. *See, e.g.*, Docket No. 76 at 3 n.2. Given the circumstances, the Court ordered Defendant Yang and Mr. Aquino to pay $3,311 in attorney's fees by October 29, 2018. *Id.* at 5. The Court further ordered Mr. Aquino to pay a fine of $2,000 by October 29, 2018. *Id.* The Court declined at that time to recommend default judgment or to initiate contempt proceedings, but the Court issued another warning:

> **THE COURT EXPECTS STRICT COMPLIANCE MOVING FORWARD WITH ITS ORDERS AND ALL GOVERNING RULES. FAILURE BY DEFENDANT AND/OR MR. AQUINO TO COMPLY MAY RESULT IN THE IMPOSITION OF SANCTIONS, UP TO AND INCLUDING, CASE-DISPOSITIVE SANCTIONS AND CONTEMPT PROCEEDINGS. THERE WILL BE NO FURTHER WARNINGS PROVIDED.**

*Id.* (emphasis in original). The Court also reset the settlement conference for November 5, 2018 (hereinafter, "the November settlement conference"), and ordered Defendant Yang to submit a settlement statement by October 24, 2018. *Id.* at 6.

As with the August settlement conference, the November settlement conference was doomed before it could even begin. Despite the imposition of sanctions for past violations and the Court's emphatic warning against further violations, Defendant Yang and Mr. Aquino again failed

---

[2] For the reasons explained at the time, the excuses provided for violating these orders did not hold water. *See* Docket No. 76 at 3 n.2. More recent revelations expose further holes in the excuses. At the time of the previous orders to show cause, Mr. Aquino represented (without sufficient support) that he did not comply with the orders to submit a settlement statement because of his children's illness and his own later illness. *See, e.g.*, Docket No. 70. At the more recent show cause hearing held on November 9, 2018, however, Mr. Aquino revealed that Defendant Yang had refused to engage with him in the process of preparing a settlement statement for the August settlement conference because Defendant Yang was unhappy with her settlement options. *See* Hearing Rec. (11/9/2018) at 10:26 – 10:27 a.m.

to submit a settlement statement as ordered. Docket No. 77.[3] This fourth failure to submit a settlement statement required the vacation of the November settlement conference. *Id.* at 2. It also resulted in the issuance of a third order to show cause that required Defendant Yang and Mr. Aquino to appear personally to explain why the latest failure to submit a settlement statement should not result in (1) entry of default judgment, (2) initiation of contempt proceedings, (3) an award of further attorney's fees, (4) imposition of fines of up to $10,000 each, and (5) referral of Mr. Aquino to the Nevada State Bar for potential disciplinary proceedings. *Id.* at 1.[4] The Court warned that: "**FAILURE TO APPEAR AS ORDERED WILL RESULT IN THE IMPOSITION OF SEVERE SANCTIONS.**" *Id.* (emphasis in original).

Notwithstanding all of the above, Defendant Yang did not appear at the show cause hearing as ordered. *See* Docket No. 81. Mr. Aquino did appear at that hearing. *See id.* Mr. Aquino provided no justification for Defendant Yang's violations of the Court's orders. Instead, Mr. Aquino represented that he had been providing written and telephonic notices to Defendant Yang as to what the Court was requiring, but that Defendant Yang had ceased responding months earlier. *See, e.g.*, Hearing Rec. (11/9/2018) at 10:12 - 10:13 a.m. Mr. Aquino expressly represented that he had given Defendant Yang notice of the show cause hearing, *id.*, but Defendant Yang still did not appear. Although Mr. Aquino represented that Defendant Yang had previously indicated a willingness to defend this lawsuit, the circumstances now demonstrate that Defendant Yang has made the conscious decision to abandon this case. *See, e.g., id.* at 10:12 - 10:14 a.m., 10:24 - 10:28 a.m. In short, there has been no justification provided for Defendant Yang's continued violations of the above orders and, instead, the record demonstrates that Defendant Yang has chosen to cease participating in any defense of this case.

As to Mr. Aquino, he represented in vague terms that his latest noncompliance stemmed from the fact that he had been suffering from debilitating illness for several months and, in support of that representation, he presented exhibits showing two doctor's appointments. *See, e.g., id.* at

---

[3] Defendant Yang and Mr. Aquino also did not pay attorney's fees as ordered, *see* Docket No. 78, and Mr. Aquino did not pay the fine as ordered.

[4] That hearing was also set for Plaintiffs to prove up their damages in the event default judgment was recommended. *See id.* at 2.

10:14 - 10:24 a.m. Mr. Aquino's attestation is not credible. As a threshold matter, the Court again notes that the evidence presented is flimsy and not well-developed. One exhibit submitted shows a quick care visit for Mr. Aquino on October 23, 2018, for cough, *history* of bronchiectasis, and *mild* intermittent asthma with exacerbation. Show Cause Hrg. Exh. A (emphasis added). The other exhibit is an "excuse slip" showing only that Mr. Aquino had some sort of appointment on November 2, 2018. Show Cause Hrg. Exh. B. These exhibits and Mr. Aquino's representations fall well short of showing that he was completely incapacitated throughout this time such that he could not comply with the order to submit a settlement statement by October 24, 2018.

Moreover, Mr. Aquino's representations are belied by the record. On October 15, 2018, the Court expressly addressed the need for Mr. Aquino to provide notice to the Court if he was truly too sick to comply with an order. *See* Docket No. 76 at 3 n.2 ("Mr. Aquino fails to explain, however, why he was unable to contact the Court or opposing counsel during this period to seek an extension of the deadline to submit settlement statements, seek a continuance of the settlement conference, or otherwise provide notice of the circumstances"). <u>This was the same order setting the November settlement conference and ordering the submission of a settlement brief.</u> *See id.* at 6. Were Mr. Aquino so sick that he could not submit a settlement statement nine days later, on October 24, 2018, the remedy to that solution was obvious: Mr. Aquino or his staff needed to make that known to the Court. The fact that no such notice was provided seriously undercuts Mr. Aquino's representations of debilitating illness. This shortcoming is especially pronounced given that the Court did not enter the pending order to show cause for another 48 hours after the deadline to submit a settlement statement had expired, *compare* Docket No. 76 at 6 (settlement statement due by 3:00 p.m. on October 24, 2018) *with* Docket No. 77 (notice of electronic filing showing that order was issued at 3:14 p.m. on October 26, 2018), but Mr. Aquino still did not provide any notice or make any request for an extension during that additional window.[5]

---

[5] Similarly, when contacted by the undersigned's courtroom deputy upon Mr. Aquino's failure to appear at the hearing set for September 25, 2018, Mr. Aquino's staff made no mention of any medical impairment. Were Mr. Aquino actually suffering from debilitating illness for several months during this period, one would expect his staff to know that fact and relay it when contacted by the Court. Mr. Aquino had no explanation as to why his staff seemed unaware of his debilitating illness and, instead, relayed only having trouble in locating him.

Additionally, when Mr. Aquino did appear at the show cause hearing on November 9, 2018, he was not slowed by illness. This was most evident when Mr. Aquino objected to Mr. Lewis' testimony to prove-up damages and provided active, engaged, and extensive cross-examination for which he had clearly expended significant time to prepare beforehand, including researching state court records. *See, e.g.*, Hearing Rec. (11/08/2018) at 10:51, 11:06, 11:14 – 11:38 a.m. Mr. Aquino's assertion of a months-long debilitating illness that prevented him from submitting a settlement statement on October 24, 2018, stands in stark contrast with his ability to prepare for and extensively participate in the prove-up hearing two weeks later. In sum, the Court has provided Mr. Aquino with numerous opportunities to substantiate the assertion that he has been too sick to comply with the Court's orders, and he has failed to do so.[6]

In short, the Court has issued during this period at least five warnings to Defendant Yang and Mr. Aquino that failure to comply with the Court's orders may result in sanctions, including severe sanctions like default judgment. Docket No. 57 at 3, Docket No. 61, Docket No. 62 at 2, Docket No. 76 at 5, Docket No. 77 at 2. Despite those warnings, Defendant Yang and Mr. Aquino have collectively violated four orders to submit a settlement statement, two orders to appear for a hearing, and two orders to pay sanctions. Two of these violations (the violation of the fourth order to submit a settlement statement and Defendant Yang's violation of the order to appear at the show cause hearing) occurred after sanctions were already imposed on both Defendant Yang and Mr. Aquino.[7]

## II. STANDARDS

Orders are not suggestions or recommendations, they are directives with which compliance is mandatory. *See, e.g.*, *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979);

---

[6] Mr. Aquino may suffer from illness. The question is whether that illness actually prevented him from complying with the orders identified here. It did not.

[7] The currently-pending order to show cause addresses specifically the failure of Defendant Yang and Mr. Aquino to comply with the fourth order to submit a settlement statement. Docket No. 77 (addressing violation of Docket No. 76 at 6). The Court does not attempt to catalogue herein every violation of the applicable rules or orders in this case. Nonetheless, the Court provides an extensive background because its consideration of an appropriate course of action includes the conduct in this case beyond the particular violation at issue. *See, e.g.*, *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1411-12 (9th Cir. 1990).

*see also Weddell v. Stewart*, 261 P.3d 1080, 1085 & n.9 (Nev. 2011).  There are several sources of legal authority by which federal courts enforce their orders.  Most pertinent here, Rule 16(f) of the Federal Rules of Civil Procedure provides for sanctions for failing to obey a "scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).  When attorneys or parties fail to comply with an order regarding a settlement conference, Rule 16(f) is triggered.  *See, e.g.*, *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990).

Rule 16(f) is "broadly remedial and its purpose is to encourage forceful judicial management." *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986) (*per curiam*).  When a court determines that Rule 16(f) has been triggered, it has broad discretion in fashioning an appropriate sanction.  *See, e.g.*, *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1397 (9th Cir. 1993).  Violations of orders are "neither technical nor trivial," *Martin Family Trust v. Heco/Nostalgia Enters. Co.*, 186 F.R.D. 601, 603 (E.D. Cal. 1999), and can have severe ramifications.  Rule 16(f) itself provides that courts may issue "any just orders."  The range of sanctions include those authorized by Rule 37(b)(2)(A)(ii)-(vii), such as entry of case-dispositive sanctions. Fed. R. Civ. P. 16(f)(1).  Although not expressly enumerated, the imposition of a fine is also among the "just orders" authorized by Rule 16(f).  *See, e.g., Nick v. Morgan's Food, Inc.*, 270 F.3d 590, 595-96 (8th Cir. 2001).

## III.    ANALYSIS

As noted above, the order to show cause presently before the Court arises out of the violation of Defendant Yang and Mr. Aquino of the fourth order to submit a settlement statement, which resulted in the vacation of the November settlement conference.  That order to show cause identifies five different potential repercussions for that violation:  (1) entry of default judgment, (2) initiation of contempt proceedings, (3) award of further attorney's fees, (4) imposition of fines of up to $10,000, and (5) referral of Mr. Aquino to the Nevada State Bar for potential disciplinary proceedings.  The Court will address each issue in turn below.

### A.    DEFAULT JUDGMENT

The Court first addresses default judgment.  In particular, the Court must decide whether this harsh, case-dispositive sanction against Defendant Yang is warranted and, if so, the amount

of damages and fees that should be awarded. For the reasons discussed below, the undersigned recommends that default judgment be entered against Defendant Yang and that damages be set in the amount of $81,319 in compensatory damages and $162,638 in punitive damages, as well as $2,564 in additional attorney's fees.

### 1.    Appropriateness of Entering to Default Judgment

Courts are mindful that entry of default judgment is a severe sanction that is justified by willfulness, bad faith, or fault. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). When considering whether to impose default judgment, courts weigh five factors identified by the Ninth Circuit: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Id.* This is not a "mechanical" test, but rather provides courts with a way to think about the appropriate result. *Id.* The Court addresses each factor in turn below.

#### a.    Public Interest in Expeditious Resolution of Litigation

Where an order is violated, the first factor supports case-dispositive sanctions. *Adriana,* 913 F.2d 1412. "Orderly and expeditious resolution of disputes is of great importance to the rule of law. By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).

Defendant Yang violated the fourth order to submit a settlement statement, which required the vacation of the November settlement conference. This behavior has thwarted the expeditious resolution of the case, and supports entry of default judgment.

#### b.    Court's Need to Manage its Docket

Where an order is violated, the second factor also supports case-dispositive sanctions. *Adriana,* 913 F.2d at 1412. It has long been recognized that the Court's inherent power to control its docket includes the ability to issue severe sanctions, such as entering default judgment, when appropriate given the circumstances. *See Thompson v. Housing Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (*per curiam*). Indeed, the Supreme Court has noted that case-

dispositive sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

Defendant Yang's violation of the fourth order to submit a settlement statement thwarted the advancement of the case by making it difficult for the Court to effectively manage its docket. As noted above, Defendant Yang's violation required the vacation of the November settlement conference. That was not an isolated occurrence. In the context of the other violations, Defendant violated <u>four</u> orders to submit a settlement statement, Docket Nos. 58, 61, 62, 76, which resulted in the Court vacating the settlement conference on two separate occasions, Docket Nos. 63, 77. As a direct result of Defendant Yang's misconduct, the usually routine matter of holding a settlement conference has become impossible. Moreover, the misconduct culminated in a significant delay of trial, which was scheduled to commence months ago, and has not yet been reset in light of the sanctions proceedings. *See* Docket Nos. 60, 68, 84. This factor also supports entry of default judgment.

### c.    Risk of Prejudice to the Opposing Party

Actions that impair an opposing party's ability to go to trial or interfere with the rightful decision of the case are prejudicial. *See Adriana*, 913 F.2d at 1412. Prejudice may also consist of "costs or burdens of litigation" incurred because of the misconduct. *Phenylpropanolamine Prods.*, 460 F.3d at 1228. "Settlement conferences provide an important vehicle for the parties to attempt to resolve their disputes." *Hologram USA, Inc. v. Pulse Evolution Corp.*, Case No. 2:14-cv-0772-GMN-NJK, 2015 WL 5165390, at *3 (D. Nev. Sept. 3, 2015), *objections overruled*, 2016 WL 2757377 (D. Nev. May 11, 2016). The cost and delay associated with behavior that interferes with the ability to conduct a settlement conference create a sufficient risk of prejudice to the opposing party for this factor to weigh in favor of case-dispositive sanctions. *See Bykov v. 7435 159th Place NE, LLC*, Case No. C 08-0802-RAJ, 2009 WL 10694432, at *2 (W.D. Wash. Apr. 15, 2009); *see also BP W. Coast Prods. LLC v. Crossroad Petro., Inc.*, Case No. 12-cv-665-JLS-JLB, 2017 WL 4586350, at *5 (S.D. Cal. Oct. 13, 2017), *adopted*, 2017 WL 5864680 (S.D. Cal. Nov. 29, 2017).

As noted above, a mandatory settlement conference was ordered by United States District Judge Jennifer A. Dorsey. Docket No. 56. The misconduct of Defendant Yang required that the settlement conference be vacated on two separate occasions. Docket Nos. 63, 77. In light of the pattern of violations and Defendant Yang's abandonment of this case, it is clear that the Court cannot hold a settlement conference in this case. The misconduct has interfered with the rightful resolution of this case. Moreover, that misconduct resulted in Plaintiffs' expenditure of unnecessary costs both with respect to the vacated settlement conferences and the three orders to show cause. The misconduct has also significantly delayed this case. There is a clear risk of prejudice in these circumstances and this factor also supports entry of default judgment.

> d.    Public Policy Favoring Disposition of Cases on their Merits

The public policy favoring disposition of cases on their merits strongly counsels against case-dispositive sanctions. *See, e.g.*, *Phenylpropanolamine Prods.*, 460 F.3d at 1228. Although this factor may cut against recommending case-dispositive sanctions, it is not enough—standing alone—to prevent such a recommendation.

> e.    Availability of Less Drastic Sanctions

To determine whether lesser sanctions are available such that case-dispositive sanctions are not warranted, the Ninth Circuit looks to (1) whether this Court considered lesser sanctions; (2) whether it tried lesser sanctions; and (3) whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. *See, e.g.*, *Connecticut General Life Insurance*, 482 F.3d at 1096. The Court may consider all of the offending party's conduct when making its determination of the appropriate sanction. *Adriana*, 913 F.2d at 1411-12. The disobedient party's conduct must be due to willfulness, fault, or bad faith for a case-dispositive sanction to be appropriate. *Connecticut General Life Insurance*, 482 F.3d at 1096.

As a starting point, the Court finds that the requisite fault to impose case-dispositive sanctions exists in this case. Defendant Yang has engaged in a long pattern of misconduct, including violating four orders to submit settlement statements, an order to pay attorney's fees, and an order to appear to show cause. No justification of any kind has been provided with respect to Defendant Yang, and it is clear that Defendant Yang has simply abandoned this case. Defendant

Yang's pattern of repeatedly violating orders manifests the requisite fault for the imposition of case-dispositive sanctions. *Cf. Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).

The imposition of case-dispositive sanctions is also supported by the repeated warnings that failing to comply with the Court's orders could result in the imposition of severe sanctions, up to and including case-dispositive sanctions. Defendant Yang's misconduct has continued unabated notwithstanding numerous warnings, Docket No. 57 at 3, Docket No. 61, Docket No. 62 at 2, Docket No. 76 at 5, Docket No. 77 at 2, and an earlier imposition of monetary sanctions, Docket No. 76 at 4, 6. In the order imposing sanctions issued on October 15, 2018, the Court declined to recommend dispositive sanctions with the caveat that the Court expected "the monetary sanctions imposed herein will suffice for Defendant and Mr. Aquino to right the ship so that this case can be decided on its merits." Docket No. 76 at 5. The Court left no doubt, however, that such leniency would not be repeated:

> **THE COURT EXPECTS STRICT COMPLIANCE MOVING FORWARD WITH ITS ORDERS AND ALL GOVERNING RULES. FAILURE BY DEFENDANT AND/OR MR. AQUINO TO COMPLY MAY RESULT IN THE IMPOSITION OF SANCTIONS, UP TO AND INCLUDING, CASE-DISPOSITIVE SANCTIONS AND CONTEMPT PROCEEDINGS. THERE WILL BE NO FURTHER WARNINGS PROVIDED.**

*Id.* (emphasis in original). Almost immediately thereafter, Defendant Yang violated that same order to submit a settlement statement by October 24, 2018. *See* Docket No. 77. The Court then set a show cause hearing, explicitly requiring Defendant Yang to appear in person and warning that "**FAILURE TO APPEAR AS ORDERED WILL RESULT IN THE IMPOSITION OF SEVERE SANCTIONS**" such as entry of default judgment, *id.* at 1, but Defendant Yang violated that order by failing to appear on November 9, 2018, Docket No. 81. In short, the Court has provided numerous warnings, including expressly contemplating that case-dispositive sanctions could be imposed, and has imposed monetary sanctions. These warnings and sanctions have proven insufficient to deter continued misconduct, even in their immediate aftermath, which further supports the entry of default judgment at this time.

Given this pattern of conduct, sanctions less severe than default judgment would be insufficient.

### f. Conclusion as to Entering to Default Judgment

For the reasons outlined above, the undersigned concludes that entry of default judgment against Defendant Yang is appropriate at this time.

### 2. Compensatory Damages to be Included in Default Judgment

Having found that the entry of default judgment is proper, the undersigned turns to the amount that should be awarded therein. A party must prove the amount of damages to be awarded through default judgment. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). The Court has wide discretion in determining the amount of damages to award. *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 947 (D. Ariz. 2013). The Court may rely on the declaration submitted by the movant and may also rely on testimony given at an evidentiary hearing. *Cf.* Fed. R. Civ. P. 55(b)(2). The burden with respect to proving up damages is "relatively lenient." *Philip Morris*, 219 F.R.D. at 498. Nonetheless, damages must be proven to a "reasonable certainty." *Jones v. Zimmer*, Case No. 2:12-cv-01578-JAD-NJK, 2016 WL 1122852, at *2 (D. Nev. Mar. 22, 2016).

### a. Lost Opportunities as Poker Dealers

Plaintiffs seek compensatory damages for lost opportunities to obtain employment as traveling poker dealers in the amount of $70,000. *See* Docket No. 66 at 6-7. At the hearing, Defendant Yang's counsel challenged whether causation had been established for these damages. *See, e.g.*, Hearing Rec. (11/08/2018) at 11:23 – 11:24, 11:27 a.m. That challenge is not persuasive. Plaintiffs' complaint provides well-pled allegations regarding lost poker dealer employment opportunities caused by Defendant's conduct. *See, e.g.*, Compl. (Docket No. 1-1) at ¶¶ 37-48, 72. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin'l Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Hence, "proximate cause properly alleged in the complaint is admitted upon default." *Roadrunner Transp. Servs., Inc. v. Tarwater*, Case No. SACV 10-1534 AG (MLGx), 2013 WL 12171729, at *1 (C.D. Cal. Aug. 9, 2013), *aff'd*, 642 Fed. Appx. 759 (9th Cir.

2016).  At any rate, Mr. Lewis provided testimony sufficient to establish causation at the prove-up hearing.  *See, e.g.*, Hearing Rec. (11/08/2018) at 10:45 – 10:46, 10:50-10:51 a.m.

As to the amount of these damages, Plaintiffs presented evidence as to their loss of income as traveling dealers that resulted from Defendant Yang's actions including, most notably, their tax returns showing a reduction in wages.  *See* Docket No. 66.  For example, Plaintiffs reported $52,392 in wages in 2015[8] but only $36,740 in wages in 2016.  *Compare* Docket No. 66 at 49 *with id.* at 63.  Plaintiffs have filed a declaration and a further tax return indicating that their taxable wages were $37,117 for 2017, and will be approximately $38,000 for 2018.  Docket Nos. 74, 75. In short, the evidence establishes compensatory damages for the loss of income related to employment as traveling poker dealers in the amounts of $15,652 for 2016, $15,275 for 2017, and $14,392 for 2018, for a total of $45,319.

### b.  Lost Promotional Opportunities

Plaintiffs also seek compensatory damages for lost promotional opportunities for Mr. Lewis caused by Defendant Yang's tortious conduct.  *See, e.g.*, Docket No. 79 at 3.  Mr. Lewis testified at some length as to these damages.  *See* Hearing Rec. (11/08/2018) at 10:58 - 11:04, 11:22 – 11:23, 11:39 -11:40 a.m.  In particular, Mr. Lewis testified that he had applied to the World Series of Poker for a supervisor position in 2015 just before the defamation at issue in this case, at which time he was interviewed.  He was told that he was well-qualified but needed another year of experience to have proper seniority for the job.  He was encouraged to reapply in 2016.  Given Defendant Yang's conduct, however, Mr. Lewis was not hired by the World Series of Poker even as a dealer in 2016.  Moreover, despite being interviewed for a supervisor position and encouraged to reapply previously, he was not selected for an interview for a supervisor position in either 2017 or 2018.  At the same time, Mr. Lewis testified that he was sufficiently qualified during this period to work as a supervisor and, indeed, had been hired to be a supervisor by another "A Circuit" event in Atlantic City with which Defendant Yang is not affiliated.  Mr. Lewis further testified that the introductory pay for supervisors is published and widely-known within the dealer community, and

---

[8] Their income in 2013 and 2014 was similar to their wages in 2015.  *See* Docket No. 66 at 14 (reporting $52,746 in wages for 2013); *id.* at 33 (reporting $50,398 in wages in 2014).

that the starting supervisor pay for the World Series of Poker is an additional $12,000 per year. This testimony suffices to establish causation and to prove the amount of these damages to a reasonable certainty.

In short, the evidence establishes compensatory damages for the loss of income related to lost supervisory advancement for Mr. Lewis in the amount of $12,000 for the years of 2016, 2017, and 2018, for a total of $36,000.

### c. Total Compensatory Damages

Accordingly, the undersigned recommends that default judgment include an award of compensatory damages in the amount of $81,319.

### 3. Punitive Damages to be Included in Default Judgment

Plaintiffs seek an award of punitive damages in an amount sufficient to deter further misconduct. Docket No. 79 at 2-4. Punitive damages "are never awarded as of right." *Jones*, 2016 WL 1122852, at *1. Even upon entry of default judgment, punitive damages must still be proven by the movant. *See id.* Under Nevada law, tort claims may provide a basis for an award of punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." N.R.S. 42.005(1). "Malice" is established by, *inter alia*, "conduct which is intended to injure a person." N.R.S. 42.001(3).

Plaintiffs provided clear and convincing evidence of malice in this case. Most obviously, Defendant Yang admitted to engaging in tortious conduct for the very purpose of injuring Plaintiffs. *See* Docket No. 56 at 6 ("Yang further admits that these false allegations were intended to prevent the Lewises from being offered future employment as traveling poker dealers on the tournament circuit"). Defendant Yang's malice has been further established by the testimony of Mr. Lewis, which detailed tortious conduct specifically designed to harm Plaintiffs that has continued at least until the prove-up hearing, despite the initiation of this litigation and despite the granting of summary judgment against Defendant Yang as to liability. *See, e.g.*, Hearing Rec. (11/08/2018) at 11:04 – 11:14 a.m. In short, Defendant Yang has engaged in tortious behavior designed for the very purpose of injuring Plaintiffs, and such conduct is properly characterized as malicious such that the imposition of punitive damages is warranted.

A number of factors may be considered in determining the amount of punitive damages to award, including the need for deterrence. *E.g.*, *Bongiovi v. Sullivan*, 138 P.3d 433, 451-52 (Nev. 2006). In this case, Defendant Yang's willful, egregious and continuing misconduct demonstrates a strong need for deterrence. As such, the undersigned will recommend that punitive damages be calculated at twice the amount of compensatory damages. *Cf. Roul v. George*, Case No. 2:13-cv-01686-GMN-CWH, 2014 WL 1308607, at *7 (D. Nev. Mar. 10, 2014), *adopted*, 2014 WL 1305044 (D. Nev. Mar. 28, 2014) (imposing punitive damages on default judgment in the amount of triple the compensatory damages).

Accordingly, the undersigned recommends that default judgment include an award of punitive damages in the amount of $162,638.

### 4. Attorney's Fees to be Included in Default Judgment

Plaintiffs seek an award of case-wide attorney's fees to be included in the default judgment. Docket No. 66 at 7-8; *see also* Docket No. 79 at 4-6.[9] Parties generally do not recover their attorney's fees for prevailing in litigation absent some statutory provision allowing an award of fees. *E.g., Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). In diversity cases, federal courts apply state law in determining whether to award attorney's fees. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 847 (9th Cir. 2009). In seeking attorney's fees in this case, Plaintiffs invoke Nevada statutory authority providing that attorney's fees may be awarded where a "defense of the opposing party was brought or maintained without reasonable ground." N.R.S. 18.010(2)(b). The award of attorney's fees under this provision is an issue entrusted to the discretion of the Court. *See Boulware v. State of Nev., Dept. of Human Resources*, 960 F.2d 793, 799 (9th Cir. 1992). This provision is to be liberally construed in favor of awarding fees in all appropriate situations. N.R.S. 18.010(2)(b)

The record in this case supports a finding that Defendant Yang's defense was maintained without reasonable ground. Defendant Yang has brought forward no evidence in support of any defense of the defamation claim brought by Plaintiffs. To the contrary, Defendant Yang admitted

---

[9] The Court separately addresses the narrower issue of whether to award fees incurred as a result of the violation of its orders.

to liability in this case during the discovery process, which led to the entry of summary judgment as to liability. *See* Docket No. 56 at 6-7.

When state law provides the basis for a party's entitlement to attorney's fees, federal courts apply state law to calculate the amount of those fees. *See Mangold v. Cal. Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). In Nevada, "the method upon which a reasonable fee is determined is subject to the discretion of the court," which "is tempered only by reason and fairness." *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548-49 (Nev. 2005) (quoting *University of Nevada v. Tarkanian*, 879 P.2d 1180, 1188, 1186 (Nev. 1994)). One permissible method of calculation is the lodestar approach, which involves multiplying "the number of hours reasonably spent on the case by a reasonable hourly rate." *See Shuette*, 124 P.3d at 549 & n.98 (quoting *Herbst v. Humana Health Ins. of Nevada*, 781 P.2d 762, 764 (Nev. 1989)). In calculating attorneys' fees, Nevada law also requires courts to consider the qualities of the advocate, the character of the work done, the work actually performed by the lawyer, and the result. *See, e.g.*, *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208, 213 (Nev. 1991) (citing *Brunzell v. Golden Gate National Bank*, 445 P.2d 31, 33 (Nev. 1969)).

Calculating attorney's fees in this case is not an easy task. Plaintiffs filed paperwork for $18,320.96 in fees billed through August 8, 2018. *See* Docket No. 79 at 5.[10] The supporting documentation includes extensive time spent on aspects of this case that did not directly involve the claim against Defendant Yang, such as responding to the motions to dismiss filed by other defendants and seeking reconsideration of the denial of the motion to amend the complaint to add Horseshoe Hammond as a defendant. *See id.* at 12, 13-14; *see also* Docket No. 23 (response to motion to dismiss); Docket No. 24 (response to motion to dismiss); Docket No. 39 (motion for reconsideration). No explanation has been provided why attorney's fees incurred for such activities are recoverable from Defendant Yang. The documentation also includes time apparently spent by attorney "BL," without any indication as to who that attorney is, what qualifications she possesses, or why it was necessary to have multiple attorneys working on the matter. *See, e.g.*,

---

[10] The Court previously concluded that the hourly rate of Mr. Smith ($200) and his paralegal ($120) are reasonable. *See* Docket No. 76 at 4. The Court applies the same rates here.

Docket No. 79 at 14-15. Moreover, the documentation includes some time for which attorney's fees were previously awarded with respect to the orders to show cause arising out of the cancellation of the August settlement conference. *Compare id.* at 21 (identifying time spent preparing settlement statement) *with* Docket No. 76 at 4 (awarding attorney's fees incurred in conjunction with the cancellation of the August settlement conference).

When a movant seeking attorney's fees submits insufficient documentation, the Court is permitted to simply reduce the fee to a reasonable amount. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). The documentation is clear that time was expended specific to Defendant Yang with respect to propounding discovery (Docket No. 79 at 17-18) and participating in summary judgment motion practice (*id.* at 19-20). With respect to discovery, Mr. Smith expended approximately seven hours. The hours expended were largely reasonable, but it appears .6 hours were expended by Mr. Smith in physically delivering discovery to Defendant Yang's counsel. *See id.* at 18. That time will be deducted as fees should not be awarded for an attorney conducting clerical work. *See, e.g.*, *Cruz v. Alhambra School Dist.*, 601 F. Supp. 2d 1183, 1193 (C.D. Cal. 2009).[11] With respect to summary judgment, Mr. Smith expended approximately 5.1 hours and his paralegal expended 2.2 hours. *See* Docket No. 79 at 19-20. The expenditure of these hours was reasonable.

Hence, the lodestar should include 11.5 hours for work performed by Mr. Smith and 2.2 hours for work performed by his paralegal. Accordingly, the undersigned calculates the reasonable attorney's fees incurred with respect to the claim against Defendant Yang for which fees have not already been awarded to be $2,564.

### 5.    Conclusion as to Default Judgment

For the reasons discussed above, the undersigned recommends that default judgment be entered against Defendant Yang. The undersigned further recommends that the default judgment

---

[11] The unnamed attorney expended time on that discovery, *see* Docket No. 79 at 17, for which the undersigned declines to award fees. A paralegal also appeared to expend time on that discovery, but charged an hourly rate of $0 for doing so. *See id.* As such, the time for attorney's fees with respect to discovery will be limited that that expended by Mr. Smith.

18

include $81,319 in compensatory damages and $162,638 in punitive damages, as well as $2,564 in additional attorney's fees.

## B. CONTEMPT PROCEEDINGS

Contempt proceedings are generally imposed to coerce compliance. As such, the imposition of case-dispositive sanctions to address a recalcitrant litigant's disobedience may obviate the need for contempt proceedings. *See Danning v. Lavine*, 572 F.2d 1386, 1389-90 (9th Cir. 1978). The currently-pending order to show cause is directed specifically at the failure of Defendant Yang and Mr. Aquino to submit a settlement statement by October 24, 2018. *See* Docket No. 77 (addressing violation of order at Docket No. 76 at 6). As noted above, the undersigned recommends that default judgment be entered against Defendant Yang, which would moot any need for coercion to comply with the requirements for having a settlement conference. Hence, in the event default judgment is entered, contempt proceedings designed to coerce compliance with the Court's order to submit a settlement statement is unnecessary.[12]

## C. ATTORNEY'S FEES[13]

The Court previously ordered Defendant Yang and Mr. Aquino to pay Plaintiffs' attorney's fees of $3,311. Docket No. 76 at 4-5. That order imposed this sanction against Defendant Yang and Mr. Aquino jointly and severally. *See id.*; *see also* Fed. R. Civ. P. 16(f)(2) (attorney's fees may be ordered against "the party, its attorney, *or both*" (emphasis added)). The fees had to be paid by October 29, 2018, *id.*, but no payment has been made, *see* Docket No. 78. The Court again **ORDERS** Defendant Yang and Mr. Aquino to pay these attorney's fees of $3,311, this time by May 1, 2019. **FAILURE TO PAY THESE FEES MAY RESULT IN FURTHER**

---

[12] The Court is ordering Mr. Aquino to pay fines and is ordering Mr. Aquino and Defendant Yang to pay attorney's fees to Plaintiffs. *See* Sections III.C., III.D. The need for obedience with those orders is not impacted by the entry of default judgment. To the extent those orders are violated, the Court will consider whether to initiate contempt proceedings on those issues.

[13] This section involves whether the Court should order a payment of attorney's fees specific to the violations of the Court's orders pursuant to Rule 16(f). The undersigned separately addresses the amount of attorney's fees that should be included in the default judgment pursuant to N.R.S. 18.010(2)(b).

**SANCTIONS AND DISCIPLINE, INCLUDING INITIATION OF CONTEMPT PROCEEDINGS.**

The currently-pending order to show cause also raises the potential for the imposition of additional attorney's fees incurred as a result of the more recent violations by Defendant and Mr. Aquino. Docket No. 77. Given the previous award, the Court instructed Plaintiffs to identify additional time that has been incurred as a result of appearing at the latest show cause hearing and making various recent filings. *Id.* at 1 n.1. Plaintiffs did not identify at that hearing additional time for which they are seeking an award of attorney's fees for the above work. Accordingly, the Court declines to award additional attorney's fees arising out of this time.

D.      COURT FINES

The Court previously ordered Mr. Aquino to pay a fine of $2,000 for violating numerous Court orders. Docket No. 76 at 4-5. That fine had to be paid by October 29, 2018, *id.*, but no payment was made. The Court again **ORDERS** Mr. Aquino to pay that fine of $2,000, this time by May 1, 2019. **FAILURE TO PAY THIS FINE MAY RESULT IN FURTHER SANCTIONS AND DISCIPLINE, INCLUDING INITIATION OF CONTEMPT PROCEEDINGS.**

The currently-pending order to show cause also raises the potential for the imposition of additional fines given the more recent violations by Defendant Yang and Mr. Aquino. Docket No. 77.[14] In particular, in the same order imposing the previous fine on Mr. Aquino, the Court also (for the fourth time) ordered Mr. Aquino to submit a settlement statement, this time by October 28, 2018. Docket No. 76 at 6. Mr. Aquino violated that order to submit a settlement statement and did not seek an extension or otherwise notify the Court indicating that he was unable to comply. Mr. Aquino has established no substantial justification for the violation. Moreover, Mr. Aquino violated that order despite his violations of three previous orders to submit a settlement statement, the issuance of numerous warnings, and the imposition of sanctions in the form of attorney's fees and a fine. When an attorney continues to engage in the same misconduct despite

_____

[14] Given the other repercussions already discussed elsewhere as to Defendant Yang, the Court declines to impose a fine on Defendant Yang.

20

the previous imposition of sanctions, it becomes clear that the previous sanctions proved insufficient and additional, more significant sanctions are appropriate. *See, e.g.*, *Garcia v. Geico Cas. Co.*, Case No. 2:13-cv-00731-JCM-NJK, 2015 U.S. Dist. Lexis 2155, at *7-10 (D. Nev. Jan. 6, 2015) (imposing quintupled fines for repetition of same misconduct). Given that Mr. Aquino has continued to engage in the same misconduct despite the previous imposition of a $2,000 fine, his unjustified violation of the fourth order to submit a settlement statement merits the imposition of a $4,000 fine.[15] This fine is to be paid personally by Mr. Aquino and shall not be passed on in any way to his client. Payment of the fine shall be made to the "Clerk, U.S. District Court" no later than May 1, 2019. **FAILURE TO PAY THIS FINE MAY RESULT IN FURTHER SANCTIONS AND DISCIPLINE, INCLUDING INITIATION OF CONTEMPT PROCEEDINGS.**

### E. DISCIPLINARY REFERRAL

Pursuant to Canon 3(B)(5) of the Code of Conduct for United States Judges, "[a] judge should take appropriate action upon learning of reliable evidence indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct." More specifically, "[j]udges are obligated to alert disciplinary authorities to possible unethical conduct by attorneys." *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006). Repeated failure to comply with the Court's orders is an appropriate basis for referral to the Nevada State Bar for investigation. *See Weddell*, 261 P.3d at 1085 n.9; *see also* Local Rule IA 11-7(a) ("An attorney. . . who fails to comply with this court's rules or orders" is subject to appropriate disciplinary action).

As noted above, Mr. Aquino has violated numerous orders in this case. *See* Docket No. 58 (order to submit settlement statement), Docket No. 61 (same), Docket No. 62 (same), Docket No. 71 (order to appear at show cause hearing), Docket No. 76 (order to submit settlement statement), *id.* (order to pay attorney's fees), *id.* (order to pay fine). He has continued to engage in this conduct after being warned and sanctioned. *See, e.g.*, Docket No. 76 (warning and sanctioning Mr.

---

[15] To be crystal clear, this fine is in addition to the earlier, unpaid fine. Therefore, Mr. Aquino currently owes $6,000 in fines.

Aquino). Given Mr. Aquino's recalcitrance in this case, the Court **REFERS** this matter to the Nevada State Bar for potential disciplinary proceedings.

The Clerk's Office is **INSTRUCTED** to provide a copy of this order to:

- Chief United States District Judge Gloria M. Navarro

- Clerk of Court Debra Kempi

- State Bar of Nevada
  Attn: Office of Bar Counsel
  3100 Charleston Blvd., Suite 100
  Las Vegas, NV 89102

## IV. CONCLUSION

The Court hereby **ORDERS** that Defendant Yang and Mr. Aquino shall pay the previously-ordered attorney's fees of $3,311 by May 1, 2019. The Court further **ORDERS** that Mr. Aquino shall pay the previously-ordered fine of $2,000 by May 1, 2019. The Court further **ORDERS** that Mr. Aquino shall pay an additional fine of $4,000 by May 1, 2019. <u>Proof of payment shall be filed on the docket within seven days of the payments being made.</u>

The Court hereby **REFERS** Mr. Aquino to the state bar for a disciplinary investigation.

The Court **DECLINES** to initiate contempt proceedings at this time, but may choose to do so in the future if the circumstances so warrant.

The undersigned hereby **RECOMMENDS** that default judgment be entered against Defendant Yang. The undersigned further recommends that the default judgment include $81,319 in compensatory damages and $162,638 in punitive damages, as well as $2,564 in additional attorney's fees.

IT IS SO ORDERED.

Dated: April 11, 2019

_____
Nancy J. Koppe
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 <u>**any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.**</u>

The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).